**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MOHAMMAD MAHDI FAKHIMI, *et al.*, <br>       Plaintiffs, <br>    v. <br><br> DEPARTMENT OF STATE, *et al.*, <br>       Defendants. | Civil Action No. 23-1127 (CKK) |

**MEMORANDUM OPINION**
(October 23, 2023)

In this action, five Plaintiffs sought injunctive and mandamus relief ordering officials of the United States Department of State ("State Department"), Secretary of State Antony Blinken, the United States Department of Homeland Security ("DHS"), Secretary of DHS Alejandro Mayorkas, consul at the U.S. Embassy in Yerevan Stephanie Zakehm, and consular officers at the U.S. Embassy in Yerevan to act on and grant their nonimmigration visa applications.

Now pending before the Court is Defendants' [15] Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Upon consideration of the briefing[1], the relevant authorities, and the record as a whole, the Court will **GRANT** Defendants' Motion and **DISMISS** Plaintiffs' Complaint in its entirety. As Plaintiffs assert that their "claims are now moot" or "imminently moot" and that Plaintiff "Javaheri is the sole remaining plaintiff pursuing his live claims," Pls.' Opp'n at 1 n.1, the Court shall dismiss claims regarding Plaintiffs Fakhimi, Mousavi, Ackley, Najdmofarrah, and Irannejad. The Court shall dismiss claims as to

---

[1] The Court's consideration has focused on Plaintiffs' Complaint ("Compl."), ECF No. 1; Defendants' Motion to Dismiss ("Defs.' Mot. to Dismiss"), ECF No. 15; Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss ("Pls.' Opp'n."), ECF No. 16; Defendants' Reply in Support of the Motion to Dismiss ("Defs.' Reply"), ECF No. 18.

Plaintiff Javaheri on the merits.

## I.   BACKGROUND

### A. Procedural History

Plaintiffs initiated this lawsuit in April 2023.  Through this action, Plaintiffs seek to compel the Government to decide their various requests for nonimmigrant visas.  *See generally* Compl. On July 7, 2023, the Court issued a Minute Order indicating that the matter was before the Court on *sua sponte* review of Plaintiffs' Complaint and ordering Plaintiffs to show cause why their Complaint should not be dismissed *sua sponte* for failure to state a claim.  *See* Minute Order, July 7, 2023 (citing *Turan Petroleum, Inc. v. Ministry of Oil and Gas of Kaz.*, 406 F. Supp. 3d 1, 3 n.1 (D.D.C. 2019) (explaining circumstances where court may dismiss complaint for failure to state a claim *sua sponte*)).  Plaintiffs then filed the [14] Response.  Before the Court could issue an opinion, Defendants filed the [15] Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), *see* Defs.' Mot. at 1, which is now fully briefed and ripe for the Court's review.

In their opposition, Plaintiffs write that "Plaintiffs Mohammad Mahdi Fakhimi and Seyedali Mousavi received final decisions on their visa applications, so their claims are now moot."  Pls.' Opp'n at 1 n.1.  They continue that "Plaintiff Erfun Ackley just received word that administrative processing in his case is complete, so his claims should be mooted shortly once Defendants finalize issuance of his visa."  *Id.*  "Plaintiff Nazanin Najdmofarrah's case number just appeared as having cleared administrative processing on the Yerevan Embassy website," so Plaintiffs explain that her claim and Mr. Irannejad's claim "should also be immintently moot."  *Id.* Therefore, Plaintiffs state that "Plaintiff Houman Javaheri is the sole remaining plaintiff pursuing his live claims."  *Id.*; *see also* Defs.' Reply at 8 ("Plaintiffs… not[e] that only Plaintiff Houman

Javaheri is still purs[u]ing his claims against Defendants.")

Accordingly, as the Court will grant Defendants' Motion to Dismiss as to the claims for Plaintiffs Fakhimi, Mousavi, Ackley, Najdmofarrah, and Irannejad, based on Plaintiffs' assertion that they are or soon to become moot, the Court addresses below only the history of Plaintiff Javaheri's application.

### B. Plaintiff Houman Javaheri's Visa Application

Plaintiff Houman Javaheri is an Iranian citizen who was admitted to Johns Hopkins University's School of Medicine to begin a Ph.D. program in Biomedical Engineering in fall 2022. *Id.* ¶¶ 67–68.   Mr. Javaheri completed the required DS-160 application form and attended an interview at the U.S. Embassy in Yerevan on April 15, 2022.   *Id.* ¶ 70.   At the interview, the consular officer reviewed Mr. Javaheri's documents and handed him a sheet informing him that his visa application was "refused under section 221(g) of the U.S. Immigration and Nationality Act" because his case "is undergoing administrative processing[.]"   *Id.* ¶ 71; *see also id.* Ex. 9.

Defendants explain that this was triggered "because Section 1735 mandated as such." Defs.' Mot. at 1.   That section of the U.S. Code restricts nonimmigrant visa issuance to nationals of countries designated as a state sponsor of international terrorism, which includes Iran, "unless the Secretary of State determines, in consultation with the Attorney General and the heads of other appropriate United States agencies, that such [noncitizen] does not pose a threat to the safety or national security of the United States."   *Id.* (citing Enhanced Border Security & Visa Entry Reform Act of 2002, P.L. 107-173 § 306, 116 Stat. 555 (May 14, 2002) (codified at 8 U.S.C. § 1735) ("Section 1735")); *see also id.* at 4.

Mr. Javaheri received an email on April 18, 2022 requesting additional information, which he provided on April 21, 2022.   Compl. ¶¶ 72–73.   He received a reply the same day stating that

his "administrative processing has started." *Id.* Ex. 10.  Since then, Mr. Javaheri has emailed the Embassy numerous times seeking adjudication of his case.  *Id.* ¶¶ 74–77.  On August 1, 2022, he was part of a group email sent to the Embassy on behalf of F-1 visa applications who were interviewed on April 15, 2022; they received a reply on August 4, 2022 indicating that the Embassy was "not able to provide [them] the approximate date when [their] Administrative Processing will be finished." *Id.* ¶ 76.  Mr. Javaheri submitted his last inquiry on April 6, 2023; he received an automatic reply instructing him to use the Embassy's "Visa Navigator" tool.  *Id.* ¶ 77.  As a result of not obtaining an F-1 visa, Mr. Javaheri was forced to defer his admission to Johns Hopkins University.  *Id.* ¶ 79.

## II.    LEGAL STANDARD

### A.  Motion to Dismiss for Lack of Jurisdiction

On a Rule 12(b)(1) motion, the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (JDB); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In determining whether there is jurisdiction, the court may "'consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)). Courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).

However, "the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of*

*Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (RMU). A court

need not accept as true "'a legal conclusion couched as a factual allegation'" or an inference

"'unsupported by the facts set out in the complaint.'" *Trudeau v. Fed. Trade Comm'n*, 456 F.3d

178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### B.  Motion to Dismiss for Failure to State a Claim

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it

"fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint

is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

557 (2007)).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain

sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its

face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678. "In evaluating a motion to dismiss, the Court must

accept the factual allegations in the complaint as true and draw all reasonable inferences in favor

of plaintiff." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006)

(PLF).

When considering a Rule 12(b)(6) motion, courts may consider "the facts alleged in the

complaint, documents attached as exhibits or incorporated by reference in the complaint" or

"documents upon which the plaintiff's complaint necessarily relies even if the document is

produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss."  *Ward

v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation

marks omitted) (quoting *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)

(RBW); *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)).  The court may also consider documents in the public record of which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

## III.   DISCUSSION

Defendants present six arguments for dismissal of Plaintiffs' Complaint: (1) Plaintiffs lack standing as unadmitted, nonresident non-citizens; (2) Plaintiffs' claims are precluded by the consular non-reviewability doctrine; (3) Plaintiffs' challenge to a condition of entry presents a non-justiciable question; (4) Plaintiffs have not identified a non-discretionary duty that Defendants are required to take; (5) certain Defendants have no role in adjudicating Plaintiffs' applications; and (6) Plaintiffs' claims fail on the merits and therefore should be dismissed for failure to state a claim.  The Court now addresses these arguments in turn.

### A.  Standing

To establish Article III standing, a plaintiff must demonstrate an injury in fact that is caused by the defendant's conduct and is redressable by the court.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Defendants allege that Mr. Javaheri lacks standing as an unadmitted, nonresident non-citizen.  *See* Defs.' Mot. at 8–14.  It is true that nonresidents lack standing to challenge *decisions* associated with their visa applications.  *See Trump v. Hawaii*, 138 S. Ct. 2392, 2419 (2018) ("foreign nationals seeking admission have no constitutional right to entry"); *Kleindienst v. Mandel,* 408 U.S. 753, 762 (1972) ("[defendant] personally, as an unadmitted and nonresident alien, had no constitutional right of entry to this country").  However, unadmitted nonresidents do have standing to challenge *delays* in the processing of their visa applications.  *Shen v. Pompeo*, No. 20-1263 (ABJ), 2021 WL 1246025, at *6 (D.D.C. Mar. 24, 2021).  In the instant

case, there have been no decisions regarding Plaintiff Javaheri's visa application, as evidenced by communications from the Embassy indicating that his application remains in administrative processing. Compl. ¶¶ 71, 73, 76. Thus, Defendants' reliance on statutes and cases regarding denials of visa applications—as opposed to delays—is not convincing.

Defendants also assert that Mr. Javaheri lacks standing because he does not have a legally protected interest, pointing to Supreme Court precedent that noncitizens have no right to a visa. *See* Defs.' Mot. at 13 (citing *Kleindienst*, 408 U.S. at 762, and *De Avilla v. Civiletti*, 643 F.2d 471, 477 (7th Cir. 1981) ("Visa applicants have no vested right in the issuance of visas")). But Mr. Javaheri is not arguing that he has a right to a visa. Rather, he is asserting a right to a final decision on his visa application under the APA. *See* Pls.' Opp'n at 9. In cases similar to the one at hand, courts have held that plaintiffs who have not received a final decision on their visa application have suffered an injury in fact: "the failure to receive final decisions on their… applications within a reasonable period." *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 282 (D.D.C. 2016) (GK). And as other courts have likewise found, this Court finds that Mr. Javaheri enjoys a "procedural right to reasonably expeditious agency action that is tethered to [his] concrete professional and financial interest in earning an advanced degree." *Rahman v. Blinken*, No. 22-2732 (JEB), 2023 WL 196428, at *2 (D.D.C. Jan. 17, 2023). Furthermore, his injuries are redressable. While the Secretary of State has no legal authority to control which visa applications consular officers grant or deny, nothing precludes him from directing them to decide pending applications "within a reasonable time," as the APA requires. *See Khazaei v. Blinken*, No. 23-1419 (JEB), 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023).

Accordingly, the Court finds that Mr. Javaheri has standing to bring this action, in

accordance with numerous decisions made by other courts in this district. *See, e.g.*, *Khazaei*, 2023 WL 6065095; *Al-Gharawy v. U.S. Dep't of Homeland Sec*., 617 F. Supp. 3d 1 (D.D.C. 2022) (RDM).

**B. Doctrine of Consular Non-Reviewability**

Defendants also argue that Mr. Javaheri's claims fail under the doctrine of consular non-reviewability. Defs.' Mot. at 26–30. This doctrine provides that "a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999). The doctrine of consular non-reviewability derives from "the political nature of visa determinations and… the lack of any statute expressly authorizing judicial review of consular officers' actions." *Id.* The scope of the doctrine also aligns with Congress's decision to commit the adjudication of visa applications exclusively to consular officers. *See* 8 U.S.C. §§ 1201(a) & (g); *see also* 8 U.S.C. § 1361.

For nearly a century, courts in this jurisdiction have applied the doctrine of consular non-reviewability and "refused to review visa decisions of consular officials." *Saavedra Bruno*, 197 F.3d at 1159–60 (collecting cases). The United States Court of Appeals for the District of Columbia Circuit recently reaffirmed that the doctrine of "[c]onsular non-reviewability shields a consular official's decision to issue or withhold a visa from judicial review." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021). However, courts of this jurisdiction have held that the doctrine does *not* apply where "plaintiffs 'do not seek judicial review of a consular decision, but instead seek a final decision on their applications.'" *Didban v. Pompeo,* 435 F. Supp. 3d 168, 174 (D.D.C. 2020) (CRC) (quoting *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*, No. 18-01388 (TSC), 2019 WL 367841, at *10 (D.D.C. Jan. 30, 2019)). This includes where a visa application remains in administrative

processing.  *See, e.g.*, *id.* at 172, 174; *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98–99 (D.D.C. 2020) (ABJ) (refusing to apply the consular non-reviewability doctrine where the "visa application remains in administrative processing" where the government actively seeks additional information from the applicant); *Nine Iraqi Allies*, 168 F. Supp. 3d at 290 (holding that the consular non-reviewability doctrine does not apply where the applicant's tracker status remains in administrative processing); *Al-Gharawy*, 617 F. Supp. 3d at 11–17 (collecting cases and holding the same); *Khazaei*, 2023 WL 6065095, at *4–5 (holding the same).

Here, the doctrine of consular non-reviewability does not preclude the Court from reviewing the adjudication of Mr. Javaheri's visa application as it remains in administrative processing.  At Mr. Javaheri's interview on April 15, 2022, the consular officer reviewing his documents handed him a sheet informing him that his visa application was "refused under section 221(g) of the U.S. Immigration and Nationality Act" because his case "is undergoing administrative processing[.]" Compl. ¶ 71.  On April 21, 2022, he received a reply stating that his "administrative processing has started." *Id.* Ex. 10.  In August 2022, Mr. Javaheri received an August 4, 2022 indicating that the Embassy was "not able to provide [him] the approximate date when [his] Administrative Processing will be finished." *Id.* ¶ 76.  As in other cases where courts have deemed the consular non-reviewability doctrine to not apply, Mr. Javaheri's application clearly remains in administrative processing per the express language of the consular officials.

Defendants acknowledge case law from the United States District Court for the District of Columbia holding that the doctrine does not apply in such circumstances but argue that they "respectfully disagree with these holdings." Defs.' Mot. at 28.  The Court finds that Defendants have not offered any persuasive authority or argument to come to that conclusion.  Accordingly, the Court holds that the consular non-reviewability doctrine does not bar judicial review of Mr.

Javaheri's claims.

### C.  Other Grounds for Non-Justiciability

Defendants also argue that as non-resident noncitizens, Plaintiffs cannot challenge a condition of entry—that being eligibility under Section 1735—as it is a non-justiciable question. Defs.' Mot. at 21.  They contend that "it is a fundamental and long-recognized separation-of-powers principle that the political branches' decisions relating to the exclusion of noncitizens abroad are not subject to judicial review."  *Id.* at 21–22.  They continue that a "determination[] of whether Plaintiffs pose a threat to the safety or national security of the United States… [is] nonjusticiable."  *Id.* at 23.

The Court first notes that Defendants' argument seems to rest in large part on the doctrine of consular non-reviewability, which Defendants raise as a separate argument in their Motion to Dismiss and as was discussed above.  In addition to citing and quoting case law regarding consular non-reviewability, *see id.* at 22 (citing and quoting from *Baan Rao Thai Rest.*, 985 F.3d at 1024; citing and quoting from *Colindres v. Dep't of State*, No. 22-5009, -- F.4th --, 2023 WL 4140277, at *2 (D.C. Cir. June 23, 2023)), Defendants argue that "courts may not review decisions to exclude noncitizens unless expressly authorized by law," *id.* (quotation omitted).  As explained above, the Court rejects Defendants' contention that the consular non-reviewability doctrine precludes the Court from reviewing the adjudication of Mr. Javaheri's visa application.

Furthermore, Defendants' argument is also premised on the incorrect characterization that there has been a determination about Mr. Javaheri under Section 1735 and/or that he has been refused a visa.  *See*, *e.g.*, Defs.' Mot. at 23.  Instead, as Plaintiffs explain, there has not been a decision made under Section 1735 nor a final refusal of his application; rather, his visa remains in administrative processing.  *See* Compl. ¶¶ 71, 76.  Other courts in this jurisdiction have found

that where applications are pending administrative processing, even if such processing was triggered by Section 1735, the "review of their applications is not complete." *Khazaei*, 2023 WL 6065095, at *4. Accordingly, unlike to Defendants' assertions to the contrary, *see* Defs.' Mot. at 23, Plaintiffs are seeking to compel a determination on Mr. Javaheri's application, *not* asking the Court to issue a decision on a refused visa application.

Proceeding with this understanding, "[t]o the extent that the reason for the delay is to allow the Secretary to determine whether [the] Plaintiff 'does not pose a threat to the safety or national security of the United States,' as required under Section 1735 before a visa can issue, Plaintiffs' unreasonable-delay claims are still justiciable." *Khazaei*, 2023 WL 6065095, at *5. Accordingly, the Court finds that Defendants' arguments here also lack merit.

### D. Non-Discretionary Duty

Next, Defendants contend that Plaintiffs' claims fail because there is no discrete agency action that a consular officer is required to take. Defs.' Mot. at 15.

As the Supreme Court has held, "a claim [for unreasonable delay] under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original). As other courts have held, "[g]ranting or refusing a visa to an applicant who has been interviewed is clearly a discrete agency action." *Khazaei*, 2023 WL 6065095, at *6. Furthermore, taking such an action is required by both the APA and the Department's own regulation, and is to be done within a reasonable time. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (noting that 5 U.S.C. § 555(b) "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time'"); *Vulupala*, 438 F. Supp. 3d at 100 (concluding

that "[g]ranting or refusing a final visa application is a mandatory agency action" under 22 C.F.R. § 41.106).

Therefore, the Court finds that Defendants' arguments again fail.

### E. Improper Defendants

Finally, Defendants also allege that certain named parties have no role in adjudicating Mr. Javaheri's requested visa and, therefore, he lacks standing as against them. Defs.' Mot. at 24.

Defendants first argue that Mr. Javaheri lacks standing to bring claims against the Department of Homeland Security and its Secretary, as they were not "involved in the refusal of their visa applications or are [not] playing any ongoing role in Plaintiffs' requests for visas." Defs.' Mot. at 24–25.  In response, Plaintiffs do not specify how DHS could redress the delay in processing Mr. Javaheri's visa, but instead merely suggest that it is "at least 'plausible'" that obtaining a security clearance from DHS is the source of the delay. Pls.' Opp'n at 15.  However, the "sheer possibility" that a defendant played a role in the delayed processing of a visa is not adequate to establish standing. *Nusrat v. Blinken*, No. 21-2801 (TJK), 2022 WL 4103860, at *4 (D.D.C. Sept. 8, 2022).  It is unclear what relief DHS or the Secretary of Homeland Security could provide in the present case given that Mr. Javaheri's visa application is with U.S. Embassy officials in Yerevan. *See Al-Gharawy*, 617 F. Supp. 3d at 9 ("Plaintiffs' petitions are pending adjudication before consular officials in the U.S. Embassy in Baghdad, and the Court is unaware of any mechanism through which DHS or USCIS can exert authority over the timing of that process."). Therefore, the Court will dismiss the Complaint as against Defendants DHS and Secretary of Homeland Security.

Next, Defendants argue that the Department of State and Secretary of State should be dismissed as those parties cannot adjudicate a visa application. Defs.' Mot. at 25.  In support,

Defendants rely on the proposition that "consular officers [have] 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'"  *Id.* (citing *Baan Rao Thai Rest.*, 985 F.3d at 1024 (quoting *Saavedra Bruno*, 197 F.3d at 1156)).  However, Mr. Javaheri is "not challenging a consular officer's adjudication of [his] ... visa application; [he is] challenging the… deprioritizing" of his application in the queue and the alleged delay.   *Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 233 (D.D.C. 2021) (APM); *see also Al-Gharawy*, 617 F. Supp. 3d at 10 ("Control over a consular officer's visa *determination… is* not the same as control over the *timing* by which the consular officer considers the applications presented to her.").  The cases Defendants cite do not "require[] suit against a consular officer to challenge such policy decisions."  *Id.*  Courts in this jurisdiction routinely reject the same argument that Defendants have raised here.  *See, e.g.*, *id.*; *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 90 (D.D.C. 2022) (RC).  Therefore, the Court finds that the Secretary of State and Department of State are properly named defendants.

**F.  Unreasonable Delay**

Finally, Defendants argue that Plaintiffs' mandamus claims also fail on the merits.  *Id.* at 31.  Plaintiffs insist that Defendants have not adjudicated Mr. Javaheri's application "within a reasonable time" as required by the Administrative Procedure Act, 5 U.S.C. § 555(b), and that the Court must "compel [that] agency action [as] unlawfully withheld or unreasonably delayed, *id.* § 706(1).  Although a court may order an agency "to perform a [mandatory] act, [i.e.,] to take action upon a matter," a court may not decide "how [the agency] shall act." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004).

To determine whether a plaintiff has sufficiently alleged that agency action has been "unreasonably delayed," courts apply the familiar "*TRAC*" factors laid out in *Telecommunications*

*Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984):

(1)  the time agencies take to make decisions must be governed by a rule of reason;

(2)  where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3)  delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4)  the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5)  the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6)  the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (internal quotation marks omitted); *see also Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017) (RJL) (applying *TRAC* factors to claim for mandamus relief).  The D.C. Circuit has noted the "importance of competing priorities in assessing the reasonableness of an administrative delay."  *Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1102 (internal citations and quotation marks omitted).  Critically here, the Court is bound by clear Circuit precedent that it may not grant relief where an "order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain."  *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991).

### 1.  *TRAC* Factors One & Two

The D.C. Circuit has explained that the first *TRAC* factor—the time agencies take to make decisions must be governed by a "rule of reason"—is the "most important," although it is generally reviewed with the second *TRAC* factor as well.  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855

(D.C. Cir. 2008).  The inquiry centers on "whether the agency's response time… is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Interest v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014) (JEB).  Because Congress has provided no statutory timeframe indicating how quickly it requires the State Department to adjudicate and re-adjudicate visa applications, *TRAC* factor two is inapplicable.  "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing."  *Skalka*, 246 F. Supp. at 153–54 (noting that a two-year delay in processing an immigration visa "does not typically require judicial intervention").  Further, to the extent that the delay is caused by the need to make a determination under Section 1735, "Congress has supplied no timeline for processing" such determinations.  *Zandieh v. Pompeo*, No. 20-919 (JEB), 2020 WL 4346915, at *5 (D.D.C. July 29, 2020) (noting same as to travel-ban exemption).

In general, courts in this jurisdiction have regularly found that the Government applies a "rule of reason" to the review of visa petitions by adjudicating applications in the order they were filed.  *See, e.g., Muvvala v. Wolf*, No. 20-cv-02423, 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020) (CJN) ("Other federal courts have held that this first-in, first-out method of adjudication constitutes a 'rule of reason' and satisfies the first TRAC factor.").  Simply put, the inquiry begins and ends with Defendants' consistent application of the "first-in, first-out" methodology.  Courts of this jurisdiction often look to the length of delay as a rough yardstick to determine whether that rule is, in fact, being applied.

Plaintiff Javaheri had his interview in April 2022 and his visa application has remained in administrative processing since.  Plaintiffs argue that this delay—just over twelve months at the time of the filing of Plaintiff's Complaint, approximately fifteen months at the time of the filing of Plaintiff's response brief, and now not quite eighteen months—is unreasonable.  Pls.' Opp'n at 21.  However, courts in this jurisdiction routinely find that delays of numerous years are not

unreasonable.  *See, e.g.*, *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (finding that a delay of forty-two months was "insufficient to warrant emergency relief in this district"); *Pourshakouri v. Pompeo*, No. 20-0402 (RJL), 2021 WL 3552199, at *8–9 (D.D.C. Aug. 11, 2021) (finding delay of forty-four months not unreasonable); *Varghese v. Blinken*, No. 21-2597 (CRC), 2022 WL 3016741, at *5 (D.D.C. July 29, 2022) (finding delay of "around four years" does "not warrant judicial intervention, standing alone"); *Arab v. Blinken*, No. 21-1852 (BAH), 2022 WL 1184551, at *8 (D.D.C. Apr. 21, 2022) (ruling that a thirty-month delay was not unreasonable); *see also Fangfang v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020); *Yavari v. Pompeo*, No. 2:19-cv-02524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.").

Plaintiffs also contend that although "Defendants have prioritized student-visa processing," Mr. Javaheri has waited months for "his supposedly-prioritized application."  Pls.' Opp'n at 23; *see also id.* at 21.  They point to an email sent from the U.S. Embassy in Yerean to a different Iranian F-1 student visa applicant stating that "[a]s a student, you are given a priority."  *Id.* (citing Pls.' Opp'n Ex. 5).  They later cite to the Department of State's prioritization of student visas during the COVID-19 pandemic and Secretary Blinken's more recent statement that "international education" and attendant visa processing remain a continued "priority for the Biden Administration."  *Id.* at 25 (citing Pls.' Opp'n Ex. 6).  However, as this Court has found before, such statements do not constitute a rule of reason for the purposes of a *TRAC* analysis.  *See Khoshrou v. Blinken*, No. 22-2859 (CKK), 2023 WL 4930086, at *7 (D.D.C. Aug. 2, 2023).  There is "no compelling reason why the 'public facing announcements' of an agency should be

understood to supply the granular substance of a rule of reason." *Milligan v. Blinken*, No. 20-2631 (JEB), 2021 WL 3931880, at *8 (D.D.C. Sept. 2, 2021). Even if the prioritization of students was to be considered a rule of reason, Mr. Javaheri's wait would still not be unreasonable, as Plaintiff has not provided any support for the idea that his F-1 student application was not given such priority. Furthermore, courts in this Circuit have found similar—and even longer—delays in F-1 visa applications not to be unreasonable. *See, e.g.*, *Shen*, 2021 WL 1246025, at *8 (finding delay of twenty-one months in adjudicating F-1 visa not unreasonable).

Plaintiffs also argue that because Mr. Javaheri seeks a *nonimmigrant* visa, the delay should be distinguished from cases addressing *immigrant* visas. Pls.' Opp'n at 24–25. As Plaintiffs explain, Mr. Javaheri's visa is inherently time-sensitive, because opportunities to study in the United States are fleeting. *Id.* at 25. Yet Plaintiffs do not offer any legal authority for the proposition that being exceptionally time-sensitive makes it distinguishable from other types of visa cases and therefore necessitates a stricter rule of reason. *Cf. Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 162 (D.D.C. 2022) (JEB); *Shen*, 2021 WL 1246025, at *8. They cite to *Washington Alliance of Technology Workers v. United States Department of Homeland Security* for the history of Congress's creation of the F-1 category to support their idea that "what constitutes an 'unreasonable' delay *must* differ in the two contexts." Pl.'s Opp'n at 25–26 (emphasis in original) (citing 50 F.4th 164, 170 (D.C. Cir. 2022)). However, as other courts have held, "whether or not the type or length of [Plaintiff's] visa makes his application more time sensitive than [other visa applications] is not for Plaintiff or this Court to decide," but rather is "exactly the kind of question within the purview of the wide discretion in immigration processing that Congress has given Defendants." *Sawahreh*, 630 F. Supp. 3 at 162–63; *see also Shen*, 2021 WL 1246025, at *8.

Plaintiffs next state that "the delay has now surpassed [the State Department's] stated,

standard 60-90 day timeframe by 800%."  Pl.'s Opp'n at 21.  Although they do not include

additional information in their brief, Plaintiffs mention this timeframe in their Complaint, citing to

the "60- to 90- day administrative-processing timeframe stated in communications from other

[State Department] posts."  Compl. ¶ 123.  They then cite to an email from the U.S. Embassy in

Kuala Lumpur to another, unrelated visa applicant that stated that "[a]dministrative processing can

last up to 60 days, but in some instances, it can take significantly longer."  *Id.* (citing Compl. Ex.

4).  This argument is unavailing for two key reasons.  First, as Plaintiff's exhibit clearly shows,

the email states that "it can take significantly longer," Compl. Ex. 4, indicating that the sixty-to-

ninety day time frame is aspirational, not mandatory, and, in this way, cannot be used as a

meaningful benchmark.  Second, the sixty-to-ninety day timeline that Plaintiff references was

communicated by a different consular post than the one at which Mr. Javaheri's application is

pending and, therefore, is of limited use.  *See Sawahreh*, 630 F. Supp. 3d at 162 (holding the same).

Plaintiffs also argue that the delay shows Defendants' failure to process applications in

accordance with the first-in, first-out methodology.  Pls.' Opp'n at 27.  They point to the

Department of State's "Visa Status Check" website" that tracks applications, including interview

dates and when they clear administrative processing.  *Id.* at 27–28.  Plaintiffs explain that "[o]f

more than 500 cases the Yerevan Embassy completed between May 23, 2023, and July 13, 2023,

fewer than ten of those were interviewed prior to 2023."  *Id.*  at 28.  Plaintiffs continue that "more

than 98% of these cleared cases were interviewed after Mr. Javaheri's."  *Id.*  However, the fact

that others were interviewed after but adjudicated before Mr. Javaheri does not, without other

information, mean that Defendants are not adhering to the first-in, first-out rule, as different

applications may require different time and attention.

In sum, the Court finds that the first and second *TRAC* factors do not lend credence to

Plaintiff Javaheri's claim.

### 2. *TRAC* Factors Three & Five

The third and fifth *TRAC* factors are often considered together and require the Court to consider Plaintiff's interests, health, and welfare. *Ghadami v. U.S. Dep't of Homeland Security*, No. 19-00397, 2020 WL 1308376, at *9 (D.D.C. Mar. 19, 2020) (ABJ).

Plaintiffs allege that "Mr. Javaheri's entire life has been placed on hold as a result of Defendants' delayed processing of his F-1 visa application." Pls.' Opp'n at 31. They continue that this "colors every aspect of his life," including making him question whether he should change career paths, abandon higher education plans, relocate, and more. *Id.* The Court finds that factor five—regarding Plaintiff's interests—weighs in his favor, as Mr. Javaheri has demonstrated he is suffering real hardships related to this uncertain educational and professional future. *Cf. Shen*, 2021 WL 1246025, at *8; *Rahman*, 2023 WL 196428, at *4.

However, Plaintiffs have failed to plead plausible allegations of harm to Mr. Javaheri's health and welfare, *cf. Shen*, 2021 WL 1246025, at *8, that are present in other cases in which courts have weighed factor three in a plaintiff's favor, *see, e.g., Ghadami*, 2020 WL 1308376, at *9 (weighing third and fifth TRAC factors in favor of visa applicant who alleged that he was "irrevocably harmed" by separation from his children and wife due to government's delay in rendering a decision on whether he was entitled to waiver of immigration restrictions in Presidential Proclamation 9645); *Didban*, 435 F. Supp. 3d at 177 (finding plaintiffs' interests in having their waiver application adjudicated were "undeniably significant" because they had "to endure a prolonged and indefinite separation, thereby forcing them to delay beginning their life as a married coupled"). While the Court recognizes that Mr. Javaheri has an interest in swift adjudication of his visa application, "so too do many others facing similar

circumstances." *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021) (TNM).

As such, the third and fifth factors, on balance, do not weigh in favor of either party.

### 3. *TRAC* Factor Four

The Court next considers the fourth *TRAC* factor, which notes "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80.

The Court finds that the fourth *TRAC* factor weighs against Plaintiffs.  First, as the Court discussed previously, the fact that others were interviewed after and processed before Mr. Javaheri does not necessarily lead to the conclusions that Plaintiffs draw, as different visa applications vary in complexity.  Additionally, the relief Mr. Javaheri seeks—the prompt adjudication of his visa application—would mean that others waiting for adjudication would be displaced, which is exactly what this four counsels against: a "reorder a queue of applicants seeking adjudication," *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021) (BAH).

The D.C. Circuit has emphasized the importance of considering "competing priorities" in assessing the "reasonableness of an administrative delay"–even "refus[ing] to grant relief when all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain." *Mashpee Wampanaoag Tribal Council, Inc.*, 336 F.3d at 1100 (quoting *In re Barr*, 930 F.2d 72, 75 (D.C. Cir. 1991)); *see also Ghadami*, 2020 WL 1308376, at *9 (finding that "expediting review in [the plaintiff's] case would merely direct government resources from the adjudication of other waiver applications").  Any such order would plainly interfere with the agency's "unique – and authoritative – position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr*, 930 F.2d at 76.

Plaintiff posits that "it could be the case that Mr. Javaheri's application is at the top of the

pile, and thus the relief requested would simply compel Defendants to adjudicate his application without 'reordering' any others." Pls.' Opp'n at 29. If that were the case, then Defendants would be adjudicating his application next and there is no need to compel them to do so. Otherwise, expediting review would merely redirect resources from other cases, which is inappropriate to compel. *Akrayi v. Dep't of State*, Civ. A. No. 22- 1289 (CRC), 2023 WL 2424600, at *4 (D.D.C. Mar. 9, 2023) (collecting cases). Courts in this jurisdiction routinely decline to grant relief that would place one prospective visa applicant ahead of others, *see, e.g.*, *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (TJK) ("This factor not only favors Defendants, but ends up altogether dooming Plaintiffs' claims of unreasonable delay."); *Verma v. USCIS*, Civil Action No. 20-3419 (RDM), 2020 WL 7495286, at *9 (D.D.C. Dec. 18, 2020), and, based on similar circumstances, *this* Court has concluded that this *TRAC* factor weighs in favor of Defendants, *see, e.g.*, *Dehghanighanatghestani,* 2022 WL 4379061, at *7; *Pushkar v Blinken*, No. 21-2297, 2021 WL 4318116, at *7 (D.D.C. Sept. 23, 2021) (CKK); *Desai v. USCIS*, No. 20-cv-1005 (CKK), 2021 WL 1110737, at *7 (D.D.C. Mar. 22, 2021); *Manzoor v. USCIS*, No. 21-2126, 2022 WL 1316427, at *5–*6. The Court will now do the same here.

### 4. *TRAC* Factor Six

Finally, the Court considers the sixth *TRAC* factor. The sixth *TRAC* factor states that a "[c]ourt need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed." *Ghadami*, 2020 WL 1308376, at *9. A Court "must determine whether the agency has acted in bad faith in delaying action." *Gona v. U.S. Citizenship & Immigr. Servs.*, 20-3680 (RCL), 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021).

Plaintiff argues that "[f]urther discovery is warranted to determine whether Defendants have singled out Mr. Javaheri's application for worse treatment, or if there are more anodyne

explanations why other applicants continue to zoom past him."  Pls.' Opp'n at 32.  However, Plaintiff fails to present any information casting Defendants' good faith into doubt other than the fact that they have processed later-interviewed applicants before Mr. Javaheri.  *See id.*

The Court finds that Plaintiff's allegations on this factor—or lack thereof—are void of the "factual content that allows the court to draw the reasonable inference" of any bad faith or impropriety to sway this factor in his favor.  *Iqbal*, 556 U.S. at 678.  Rather, Mr. Javaheri fails to show that the delay is "nefarious or the result of ill will."  *Ramirez*, 594 F. Supp. 3d at 95. As *TRAC* directs, however, the lack of plausible allegations of impropriety does not weigh against Mr. Javaheri, and therefore does not alter the Court's analysis.  *See Palakuru*, 521 F. Supp. 3d at 53 (considering the sixth TRAC factor "neutral" even though the plaintiff alleged that the government had engaged in "purposeful delay" and "artificially inflate[d] [ ] processing times").

## IV.   CONCLUSION

For the foregoing reasons, the Court shall **DENY AS MOOT** Defendants' [15] Motion to Dismiss as to Plaintiffs Fakhimi, Mousavi, Ackley, Najdmofarrah, and Irannejad and **GRANT** Defendants' Motion to Dismiss as to Plaintiff Houman Javaheri.  The Court shall therefore **DISMISS** Plaintiffs' Complaint in its entirety.  An Order will accompany this Memorandum Opinion.

    /s/                 

COLLEEN KOLLAR-KOTELLY
United States District Judge
